IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHEILA GAREY                              *

          Plaintiff          *

         vs.                       *   CIVIL ACTION NO. MJG-15-778

WAL-MART STORES EAST, LP        *

         Defendant          *

*        *        *        *        *        *        *        *        *

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 20] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.

In this case, Plaintiff Sheila Garey ("Garey") presents, in the Second Amended Complaint [ECF No. 15] ("SAC"), claims against her former employer, Wal-Mart Stores East, LP ("Walmart") under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the equivalent Maryland Fair Employment Practices Act, Maryland State Government Article § 20-601, et seq. ("MFEPA").

## I.   PROCEDURAL BACKGROUND

Garey, faced with a Motion to Dismiss [ECF No. 5], superseded her Complaint [ECF No. 1] with the First Amended

Complaint [ECF No. 7].  The Court granted Walmart's Motion to
Dismiss the First Amended Complaint [ECF No. 10].  In the
Memorandum and Order Re: Motion to Dismiss [ECF No. 14], the
Court permitted Garey to file "a Second Amended Complaint that
clearly and adequately sets forth the precise claims that she is
asserting."  Id.  Garey has filed the SAC.

By the instant motion, Walmart seeks dismissal of the SAC,
contending that Garey lacks standing to sue and, even if she did
have standing, she did not adequately plead a plausible claim.

II.  DISCUSSION

A.  The Facts[1]

In 1992, Garey began working for Walmart as an associate in
the toy department of Walmart's Easton, Maryland store.  SAC ¶
5.  In May 2006, Garey was promoted to assistant manager of the
Cambridge, Maryland store.  Id. ¶ 11.

"Over time, [Garey] developed problems with her knees which
caused swelling, grating and substantial pain requiring a course
of therapy and injections and ultimately, Plaintiff required
knee replacement surgery."  Id. ¶ 13.

In or around April 2012, Walmart agreed to give Garey four
weeks of leave for knee surgery.  Id. ¶ 15.  An additional four

---

[1]   The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendant.

weeks of leave related to her knee surgery was granted in or
about June 2012.  Id. ¶ 16.  As a result of continued "knee pain
and swelling" and "difficulty standing for long periods of time,
walking long distances, bending and lifting," id. ¶ 18, Garey
was granted extended leave from late September 2012 through the
end of May 2013.  Id. ¶ 19.

"In or about January 2013," Garey's doctor determined that
she "would be able to return to work."[2]  Id. ¶ 20.  Even though
she had been granted extended leave through May 2013, Garey
returned to work "for a short period of time, despite her
continuing knee problems."  Id. ¶ 22.  Then, in March 2013,
Garey's doctor[3] notified her that she would require knee-
replacement surgery and that "she should not work until her knee
replacement surgery was completed and then she would be out of
work for 4-6 months, after which time she could return to work
with restrictions on her mobility and ability to bend and lift."
Id. ¶ 23.  Garey informed Walmart of the change in her medical
status and stopped working.  Id. ¶ 24.

---

[2]  In her initial Complaint, Garey contended that her doctor
determined that she "would be able to return to work for periods
of between 5-8 hours per day."  Compl. [ECF No. 1] ¶ 20.  In the
First Amended Complaint, Garey contended that her doctor
determined that she "would be able to return to work with no
restrictions."  Am. Compl. [ECF No. 7] ¶ 22 (emphasis added).
The SAC states only that it was determined she could "return to
work."  SAC ¶ 20.

[3]  The word "doctor" was inadvertently omitted from ¶ 23 of the
SAC.

At the expiration of the extended medical leave,[4] Walmart
informed Garey "that she could not return to work unless she
could return without any restrictions."  Id. ¶ 25.  Garey
"sought [a further] extension of her medical [leave] to allow
her to have knee replacement surgery on June 25, 2013, undergo
8-12 weeks of physical therapy and return to work at the end of
the physical therapy."  Id. ¶ 26.  Walmart denied Garey's
request.  Id. ¶ 28.

On or around June 6, 2013, Garey filed a Charge of
Discrimination with the United States Equal Employment
Opportunity Commission ("EEOC").  On July 9, 2013, Walmart
terminated Garey's employment.  Id. ¶ 29.  Garey received a
Right to Sue letter from the EEOC on December 18, 2014.  Id. ¶
34.


   B.   Garey's Standing to Sue

Walmart seeks dismissal, pursuant to Rule 12(b)(1),[5]
asserting that the Court lacks subject matter jurisdiction.
When a defendant asserts a defense pursuant to Rule 12(b)(1),
the plaintiff has the burden of proving that subject matter

---

[4]  The date is not specified in the SAC, but presumably in May
2013.

[5]  All "Rule" references herein are to the Federal Rules of Civil
Procedure.

jurisdiction exists.  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The ADA and MFEPA follow the procedural requirements of Title VII.  See, e.g., 42 U.S.C. § 12117(a); Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999).  "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013).

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC."  Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."  Id.

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."  Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (internal quotation omitted).  The "same standard applies to administrative exhaustion under Maryland law."  Thompson v. Golden M Co., Civ. No. WDQ-14-3254, 2015 WL 3888753, at *3 (D. Md. June 22, 2015).

Allegations in an administrative charge are not "reasonably related" to the allegations in the complaint where they do not "implicate the same time frame, actors and discriminatory conduct." Johnson v. Balt. City Police Dep't, Civ. No. ELH-12-2519, 2014 WL 1281602, at *11 (D. Md. Mar. 27, 2014); Chacko, 429 F.3d at 511 (finding no administrative exhaustion and noting that "the administrative charges . . . dealt with different time frames, actors, and conduct than the central evidence at trial").

### 1.   The EEOC Charge

On or about June 6, 2013, while still employed by Walmart, Garey[6] filed her Charge of Discrimination with the EEOC (the "EEOC Charge"). SAC ¶ 31. The EEOC Charge[7] states that Garey

---

[6]   Through EEOC Advocates LLC (a non-lawyer representative).

[7]   The Court may consider the contents of the EEOC Charge in deciding on Defendant's motion to dismiss. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) ("This circuit has also held that courts may consider a document that the defendant attaches to its motion to dismiss if the document 'was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" (citation omitted)). As Judge Hollander of this Court stated recently:

> Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, i.e., effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint. See, e.g., Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab., AW-12-03172, 2013 WL 791208, at *6 (D.Md. Mar.1, 2013)

was discriminated against because of her age and disability. ECF No. 20-2 at 4.   A notation on the first page of the EEOC Charge indicates that the earliest discrimination occurred in 2007 and that the latest occurred at some unspecified time in 2013, necessarily prior to the June 6, 2013 filing date.   Id.

A document entitled "Particulars" - attached to the EEOC Charge - states that the bases of the discrimination claim were:

- Disability – knee injury, wrist injury, previous cancer;

- Failure to accommodate a disability;

- Age – 62; and

- Retaliation for engaging in protected activity.

Id. at 6.   The Particulars document states that Garey "was subject to harassment, disparate treatment and a hostile work environment on a weekly basis" and outlines 21 instances of

---

(court may consider a charge of discrimination attached to motion to dismiss where the charge is integral to the complaint and where its authenticity is undisputed); Betof v. Suburban Hosp., Inc., DKC-11-01452, 2012 WL 2564781, at *3 n. 6 (D.Md. June 29, 2012) (same); White v. Mortgage Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (a court may consider a charge of discrimination attached to motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected).

Bowie, v. Univ. of Md. Med. Sys., Civ. No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015).

alleged discrimination occurring between June 2007 and September 2012. See id. at 8-17.

The EEOC Charge does not refer to Walmart's termination of her employment, an action that took place on July 9, 2013, a little more than a month after the EEOC Charge was filed.[8]

### 2.   The SAC Claim

Garey claims that she "was terminated because [due to her knee problems] she was unable to return to work without restrictions." SAC ¶ 29.

She states, in the SAC, that the EEOC Charge "identified Defendant's discrimination as a 'continuing action.'" Id. at ¶ 32. She further states that:

> As part of its response to Plaintiff's charge, Defendant raised issues related to Plaintiff's discharge in May-July, 2013, all of which were reasonably related to Plaintiff's initial charge of discrimination based on her disability.

Id. ¶ 33.

### 3.   Relationship of SAC Claim to EEOC Charge

There is no adequate relationship between Garey's SAC claim and the EEOC Charge.

---

[8]  Garey makes no contention that the termination of her employment was in retaliation for her filing the EEOC Charge.

The SAC claim is based upon her suffering from an adverse employment action, i.e., Walmart's alleged wrongful termination of her employment, an adverse employment action that occurred after the EEOC Charge was filed.  Hence, obviously, the claim in the SAC was not within the scope of the EEOC Charge.  Moreover, Garey did not file, as she could have, an amended, supplemental or subsequent charge including claims related to the termination of her employment.  See Thompson v. Golden M Co., No. CIV. WDQ-14-3254, 2015 WL 3888753, at *3 (D. Md. June 22, 2015) ("The EEOC permits amendments to cure technical defects or omissions, including . . . to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." (quotation marks omitted)).

Garey contends that her claim of wrongful termination would have been "developed by reasonable investigation of the [EEOC Charge]."  Chacko, 429 F.3d at 506.  In this regard, Garey seeks to rely upon counsel for Walmart's August 1, 2014 letter to the EEOC investigator [ECF No. 12-1] that refers to the termination of her employment.  However, in that letter, the only reference to Garey's termination is in the following paragraph:

9

On June 10, 2013, Walmart sent a
certified letter to Ms. Garey's home address
reminding her that her leave of absence
expired on May 29, 2013 and requesting that
she contact Walmart on or before June 19,
2013 to discuss her plans for returning to
work. The letter clearly and unambiguously
notified Ms. Garey that her employment would
be administratively terminated if she did
not return to work by June 25, 2013. On
July 9, 2013, after waiting more than four
weeks without any response from Ms. Garey,
Walmart administratively terminated Ms.
Garey's employment for failing to return to
work from a leave of absence.

ECF No. 12-1 at 3 (citations omitted).

Thus, Walmart's counsel merely refers to the fact that

Garey had been terminated on July 9, 2013, i.e., the status of

Garey's employment as of the date of the letter. The letter

does not indicate that there was any issue regarding the

propriety of Garey's employment termination. There was nothing

warranting administrative investigation of a claim based upon

the termination. And, as noted above, Garey did not communicate

any such claim to the EEOC.

The Court finds that the SAC presents a claim not

reasonably related to those presented to the EEOC. See, e.g.,

Johnson v. Balt. City Police Dep't, Civ. No. ELH-12-2519, 2014

WL 1281602, at *10 (D. Md. Mar. 27, 2014) ("The adverse

employment action at issue — forced retirement — is distinct

from the conduct found in plaintiff's March 2011 Charge of

Discrimination, which concerned only the accommodation request

and medical suspension."); <u>Jones v. Republic Servs., Inc.</u>, No.
AW-10-CV-1999, 2011 WL 6000761, at *3 (D. Md. Nov. 29, 2011)
("This claim — denial of an alternative schedule — is
considerably different from the discriminatory behavior alleged
in the administrative charge—suspension and termination.").

Garey contends that "[a]ll of Plaintiff's claims are
specifically focused on the issue of disability discrimination,
specifically related to her knee problems, which Defendant
specifically addressed in [its Supplemental Statement of
Position to the EEOC]." Pl.'s Opp. [ECF No. 21] at 6.  However,
the claims in Garey's EEOC Charge are not "specifically related
to her knee problems."  Rather, the EEOC Charge claims focus on
disparate treatment and a hostile work environment in which her
job performance was repeatedly criticized by her superiors.  For
example, Garey asserted that:

- She was subjected to abusive treatment from a General
  Manager, who regularly berated her — often in front of
  other employees — for "issues with work ethic" and
  inability to inspire "respect from the overnight
  staff."  ECF No. 20-2 at 8, 11, 12, 14, 17;

- Her mid-year evaluation had been withheld from her for
  six months, while all other management employees
  received theirs on time, <u>id.</u> at 10;

- She was assigned to a disproportionate number of night
  shifts, <u>id.</u> at 11-12; and

- On September 21, 2012, the General Manager stated to
  Garey, over the employees' walkie-talkie system (and
  thus heard by all employees), "did you leave your
  brains at home, because you did not bring them to work
  with you today."  <u>Id.</u> at 17.

11

There are only two explicit references to a knee problem in the EEOC Charge.  One is a listing of "Disability- knee injury" under the heading "Basis of discrimination."  Id. at 6.  The other is in a statement that "[t]he Complainant had surgery on her left knee and was placed on medical leave.  She has been on [a] medical leave of absence as of July 9, 2012."  Id. at 16.

Except for a passing reference to the denial of a 2012 request to bring a cane to work, id. at 8, the EEOC Charge has no allegation that she suffered any adverse action by virtue of her knee problem.

In sum, the Court finds that Garey has failed to exhaust her administrative remedies with regard to her SAC claim.  Since Garey lacks standing to proceed on the SAC, the instant case must be dismissed for lack of jurisdiction.


B.  Adequacy of The Pleading

As discussed herein, the Court finds that even if Walmart were not entitled to dismissal on jurisdictional grounds, the SAC would be dismissed pursuant to Rule 12(b)(6), for failure to state a plausible claim for relief.


1.  Dismissal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only

contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679 (alteration in original)).

2.   <u>Garey's Claim is Unclear</u>

The ADA and the MFEPA prohibit discrimination against a qualified individual with a disability.  42 U.S.C. § 12112(a); Md. Code Ann., State Gov't § 20-606(a)(4).

In the SAC, Garey does not cite to any specific provision of the ADA or MFEPA that she believes Walmart has violated.  The SAC does not clearly state whether Garey is claiming that Walmart retaliated against her by terminating her on account of her disability, or merely failed to accommodate her disability. Thus, Garey did not "set[] forth <u>the precise claims that she is asserting</u>" as required by this Court's August 31, 2015 Order. <u>See</u> ECF No. 14 at 10 (emphasis added).  In any event, whatever type of discrimination Garey may be asserting, she has failed adequately to plead that she was a qualified individual with a disability for ADA and MFEPA purposes.


3.   <u>Qualified Individual With a Disability</u>

a. <u>Disability</u>

To qualify as a "disability" for purposes of the ADA and the MFEPA, a claimant's disability must be one that "substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), "as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  "[M]ajor life activities include, but are not limited to, caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, [and] bending . . . ."  42 U.S.C. § 12102(2)(A).

With regard to Plaintiff's knee problems, the SAC states that:

- Garey "suffers from severe knee pain which substantially limits her major life activity of walking as well as other major life activities including, but not limited to, bending, stooping, standing for long periods of time."  SAC ¶ 7;

- Garey's knee problems "caused swelling, grating and substantial pain requiring a course of therapy and injections and ultimately, Plaintiff required knee replacement surgery."  Id. ¶ 13;

- "As a result of her persistent knee pain, [Garey] had difficulty standing for long periods of time, walking long distances, bending and lifting, all major life activities as well [as] job requirements."  Id. ¶ 14;

- Garey had knee surgery in April 2012.  Id. ¶¶ 16-17;

- Garey's knee pain persisted after her surgery.  Id. ¶ 18; and

- Garey's doctor informed her in March 2013 that she "needed a knee replacement" and that "she should not work until her knee replacement surgery was completed and then she would be out of work for 4-6 months, after which time she could return to work with restrictions on her mobility and ability to bend and lift."  Id. ¶ 23.

The SAC does not present specific factual allegations regarding the degree to which Garey's knee problems limit her major life activities.  Walking, bending, and lifting are,

indeed, major life activities.  However, the conclusory
allegation that her pain "substantially limits" those activities
is merely a formulaic recitation of the elements of the claim,
rather than a specific factual allegation that creates a
plausible cause of action.  See Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007) ("a formulaic recitation of the elements of
a cause of action" is insufficient to state a claim).  Moreover,
stating that she "had difficulty" performing certain tasks is
insufficient to show, as she must, that she was limited in that
activity "as compared to most people in the general population."
29 C.F.R. § 1630.2(j)(1)(ii).

Finally, even if it could be assumed that Garey had
presented a plausible claim that she was disabled,[9] as discussed
below, she has not presented a plausible claim that she was a
qualified individual for ADA and MFEPA purposes.

### b.  Qualified Individual

A "qualified individual" entitled to the protections of the
ADA, or a "qualified employee" protected under the MFEPA, is one
"who, with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds or desires."  42 U.S.C. § 12111(8).

---

[9]  This would be on the assumption that Garey's allegations of
her knee surgery in 2012 followed by knee replacement surgery in
2013 would suffice.

To establish that she was a "qualified individual," Garey must prove that:

> (1) "she could perform the essential functions of the job, <u>i.e.</u>, functions that bear more than a marginal relationship to the job at issue," or
>
> (2) some "reasonable accommodation by the employer would enable [her] to perform those functions."

<u>Bell v. Shinseki</u>, 584 F. App'x 42, 43 (4th Cir. 2014) (quoting <u>Tyndall v. Nat'l Educ. Centers, Inc. of Cal.</u>, 31 F.3d 209, 213 (4th Cir. 1994) (alteration in original)).

The ADA and MFEPA do not require an employer to curtail or eliminate essential job functions to accommodate an employee's disability.  <u>See</u> 42 U.S.C. § 12111(8) (a "qualified individual" is one "who, with or without reasonable accommodation, <u>can perform the essential functions</u> of the employment position that such individual holds or desires" (emphasis added));  Md. Code Ann., State Gov't § 20-606(a)(1)(i) ("An employer may not . . . discharge, or otherwise discriminate against any individual . . . because of . . . the individual's . . . disability unrelated in nature and extent so as to reasonably preclude the performance of the employment.").

The SAC does not set forth factual allegations presenting a plausible claim that, when terminated, Garey was, or could in the future be, able to perform the essential job functions of an

assistant manager.  The SAC asserts that Garey's "job requirements" as an assistant manager, included "standing for long periods of time, walking long distances, bending and lifting."  Id. ¶ 14.  However, the SAC does not allege specific facts demonstrating whether, or how, an accommodation by the employer would enable her to perform these job functions.

Plaintiff merely presents conclusory allegations that she "sought a reasonable accommodation, extended leave and then a return to work with some restrictions based upon mobility and ability to lift and bend following her knee replacement surgery."  Id. ¶ 38.  The SAC does not, however, identify the nature of the restrictions she proposed or the extent to which they would allow her to perform her job functions.

Furthermore, as to the alleged wrongful denial of extended leave as a reasonable accommodation, the SAC does not state whether the extended leave Garey sought was to be unpaid or paid and, if paid, whether she had accrued such a period of extended leave.  Employers are not required to offer, as a reasonable accommodation, paid leave beyond an employee's scheduled amount. Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995).  Thus, the SAC does not present a plausible claim that Garey's extended leave request was for a "reasonable" accommodation.

18

In sum, the SAC fails to present a plausible claim that Garey was a qualified individual entitled to relief under the ADA or MFEPA.

III. <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 20] is GRANTED.

2.   Judgment shall be issued by separate Order.

SO ORDERED, this <u>Monday, April 25, 2016</u>.

_____/s/_____
Marvin J. Garbis
United States District Judge